1
2
3
4            UNITED STATES DISTRICT COURT
5           EASTERN DISTRICT OF CALIFORNIA
6
7

| | |
|---|---|
| ARNOLD BETSCHART,<br><br>                    Plaintiff,<br><br>     v.<br><br>GORDON TRUCKING, INCORPORATED,<br><br>            Defendant. | 1:08-CV-00204-OWW-GSA<br><br>MEMORANDUM DECISION AND ORDER DENYING DEFENDANT GORDON TRUCKING, INC.'S MOTION TO STRIKE (Doc. 8) |

8
9
10
11
12
13              1.    **INTRODUCTION**
14
15       Defendant Gordon Trucking ("Gordon Trucking") moves to
16  strike portions of Plaintiff Arnold Betschart's ("Betschart")
17  complaint under Fed. R. Civ. P. 12(f); alleging it contains
18  numerous factual allegations which are immaterial and irrelevant
19  to plaintiff's claims, and which unnecessarily and prejudicially
20  expand the potential scope of litigation in this case.  In his
21  complaint, Betschart alleges employment discrimination due to age
22  under the Age Discrimination in Employment Act ("ADEA") 29 U.S.C.
23  § 623 *et seq.* and California Fair Employment and Housing Act
24  ("FEHA") Cal. Gov't. Code. § 12940 *et seq.*, employment
25  discrimination due to disability under the Americans with
26  Disability Act ("ADA") 42 U.S.C. § 12112 *et seq.* and FEHA Cal.
27  Gov't. Code. § 12940 *et seq.*, violation of the Employment
28  Retirement Income Security Act ("ERISA") 29 U.S.C. § 1140, and

                               1

alleges a wrongful adverse personnel action claim against public policy.   Betschart opposes the motion to strike on grounds that certain allegations are relevant.   Oral Argument was heard on July 21, 2008.

## 2.   BACKGROUND

### A.   Procedural History

Betschart filed his complaint on February 2, 2008.   (Doc. 1, Compl.)   On March 31, 2008 Gordon Trucking filed a Motion to Strike.   (Doc. 8, Mot. Strike.)   Betschart filed an initial Opposition to the Motion to Strike on May 2, 2008.   (Doc. 12, Opp'n.)   Betschart then amended his Opposition to the Motion to Strike on May 2, 2008.   (Doc. 13, Am. Opp'n.)   Gordon Trucking replied to the Opposition on May 12, 2008.   (Doc. 14, Reply.)

### B.   Factual History

Arnold Betschart is a United States citizen and resident of California, born on March 25, 1948.   (Compl. ¶ 6.)   Betschart alleges on June 6, 2007, he was involuntarily terminated by Gordon Trucking after employment with Gordon Trucking for a total of over 18 years. (*Id.*)

Betschart alleges Gordon Trucking Incorporated is a corporation with its headquarters in the State of Washington, with a work location in Turlock, California which is a judicial district of this Court, and additionally, is where Betschart was employed at the time of his involuntary termination from employment.   (Compl. ¶ 7.)

Betschart alleges there was a gap in his total employment with Gordon Trucking.   He alleges he worked for Gordon Trucking

**2**

for a period from August 8, 1988 as California Director of Sales and subsequently Director of Operations in Washington until April 15, 1994, when he resigned due to family reasons and moved back to California.  (Compl. ¶¶ 8, 9, 10.)  On February 13, 1995, Betschart was rehired to be Director of Regional Operations for a new terminal in Turlock, California.  (Compl. ¶ 11.)  He worked there until May 31, 2006, when he was involuntarily moved into a position as director of maintenance/operations.  (Compl. ¶ 12.)  Betschart later was terminated on June 6, 2007.  (Compl. ¶ 20.)

### 1.   Allegations of Age Discrimination

Betschart alleges in February 2001, he won a significant work achievement award from Target Corporation for the year 2000, and was invited to an awards dinner.  (Compl. ¶ 28.)  Betschart was willing to stop a planned vacation to go but was told by a Gordon Trucking executive "At your age and your longevity, you don't need to go."  (*Id.*)  Betschart alleges this is a markedly different stance from that Gordon Trucking has taken toward other employees who have won this same award, as they have consistently been allowed to go to the awards dinner at Gordon Trucking's expense, and have been flown to it on the corporate jet.  (*Id.*)

Betschart claims he was discriminated against by an involuntary change of his company position on May 31, 2006.  (Compl. ¶ 12.)  He learned of this change when Steve Gordon, Chief Operating Officer of Gordon Trucking who is in his 30s, stated to the non-driving staff in Turlock: "It is time for the old guys to step down and let the younger employees take charge."  (Compl. ¶ 13.)  When Betschart responded with "Watch the old guy stuff," Steve Gordon replied "It's time for the senior management

1   to step aside and allow the younger employees to take charge."
2   (*Id.*)  Betschart was then replaced as director of regional
3   operations by an employee who was in his 30s.  (*Id.*)

4       Betschart alleges discrimination occurred in September 2006,
5   when he found out his prior position's compensation was lost.
6   (*Id.*)  Although, his base salary remained the same, he lost the
7   additional incentive package he had previously been eligible for
8   and had received.  (Compl. ¶¶ 12, 15.)

9       Additionally, in May 2007, Betschart alleges he was assigned
10  a younger "consultant" who questioned Betschart about when
11  Betschart would retire.  (Compl. ¶¶ 16, 17.)  The following
12  month, Betschart was terminated and his job was given to the
13  "consultant," who was approximately 33 years old.  (*Id.*)

14      Betschart was terminated on June 6, 2007.  Two younger
15  executives told Betschart they were going to have a cup of coffee
16  with him at Starbuck's.  (Compl. ¶ 20.)  There, he was informed
17  of his termination, and that possession of his company car was
18  immediately revoked.  (*Id.*)  The two executives drove Betschart
19  home, where they required him to immediately clean out his
20  company car in his driveway in full view of his family and
21  neighbors.  (*Id.*)  Betschart was told to return later to work to
22  pick up his belongings.  (*Id.*)  When he returned, he was not
23  allowed to go back to his office, and was given his already boxed
24  up belongings.  (*Id.*)

25      Betschart alleges he received a positive performance review
26  for the period from 2003 into 2004 which supported a 2005 bonus.
27  (Compl. ¶¶ 22, 23.)  He alleges in June/July 2006, shortly after
28  being moved into the new position, he received a slightly more

4

negative performance review.  (Compl. ¶ 24.)  Finally, upon termination on or about June 6, 2007, Betschart alleges he received a very negative performance review for the period from June 2, 2006 through June 1, 2007.  (Compl. ¶¶ 25, 26.)  This was Betschart's first performance evaluation in his new position, and Betschart was given no time to correct any perceived alleged deficiencies, as he was terminated.  (Compl. ¶¶ 25, 26.)

Betschart received no warning letters or any type of progressive discipline prior to his termination.  (Compl. ¶ 27.) He alleges he was shocked he was being terminated and believed the termination made no sense based on his pay raises over the years, long service to the company, lack of any progressive discipline, lack of any warning concerning termination, and positive feedback he had received over the years. (*Id.*)

### 2.   Allegations of Disability Discrimination

Additionally, Betschart alleges disability discrimination. Among other things, Betschart claims Gordon Trucking discriminated against him due to the high cost of the healthcare his family required.  Gordon Trucking paid most medical costs for Betschart, his wife, and his stepson through the health plan it provided.  (Compl. ¶ 29.)

 In 1994, Betschart had heart surgery.  (Compl. ¶ 30.)  He alleges when he came back to work, Larry Gordon, President and CEO of Gordon Trucking, stated to someone in Betschart's presence that he had to hire Betschart back because "he had spent 50-plus grand for Betschart's health expenses, and he needed to get his money back."  (*Id.*)

In 2004, Betschart had hip replacement surgery.  (Compl. ¶

31.)  He alleges after returning to work on two occasions he was asked by company executives whether the other hip would be done, too.  (Compl. ¶¶ 32, 33.)

In 2005, Betschart's wife was diagnosed and began treatment for ongoing and continuous skin cancer.  (Compl. ¶ 34.) Additionally, between September 2005 and Betschart's termination, Betschart's wife had six dental surgeries and an endoscopy. (*Id.*)  Betschart also alleges Gordon Trucking knew Betschart's stepson, who is 11 years old, has cerebral palsy.  (*Id.*) Betschart alleges during conversation post May 31, 2006, his supervisor made comments about the prohibitive cost of the medical procedures his wife required.

Betschart further alleges he was discriminated against because of his own physical disability.  He alleges starting in 1990 when Betschart went up to work for Gordon Trucking at its Pacific, Washington headquarters, various management persons working for Gordon Trucking, teased Betschart calling him "Chester" on numerous occasions in relation to the disability in his left hip.  (Compl. ¶ 36.)  Betschart alleges this was a reference to a disabled character in the television show "Gunsmoke" who limped with an artificial leg.  (Opp'n 12).

In or about 1997 or 1998, Betschart went on a company hunting trip and was slow in getting around due to his hip. (Compl. ¶ 37.)  He alleges the president of Gordon Trucking made a reference to Betschart's disability, and thereafter, Betschart was never invited again on company hunting trips, though they continued to occur regularly.  (*Id.*)

Betschart alleges on January 25, 2006, he was teased and

**6**

taunted by top company managers about his inability to run across a street. (Compl. ¶ 38.)

### 3.   ANALYSIS

**A.   Motion To Strike Legal Standard**

The Federal Rules of Civil Procedure do not provide for a motion to strike documents or portions of documents other than pleadings.  Rule 12(f) provides that "redundant, immaterial, impertinent, or scandalous matters" may be "stricken from any pleading."  Fed. R. Civ. P. 12(f).  A motion to strike is limited to pleadings.  *See Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  However, a "motion to strike" materials that are not part of the pleadings may be regarded as an "invitation" by the movant "to consider whether [proffered material] may properly be relied upon."  *United States v. Crisp*, 190 F.R.D. 546, 551 (E.D. Cal. 1999) (quoting *Monroe v. Bd. of Educ.*, 65 F.R.D. 641, 645 (D. Conn. 1975) ("[A] motion to strike has sometimes been used to call to courts' attention questions about the admissibility of proffered material in [ruling on motions].") (citations omitted)).

Motions to strike are disfavored and infrequently granted.  *See Pease & Curran Refining, Inc. v. Spectrolab, Inc.*, 744 F. Supp. 945, 947 (C.D. Cal. 1990), *abrogated on other grounds by Stanton Road Ass'n v. Lohrey Enters.*, 984 F.2d 1015 (9th Cir. 1993).  Such motions should be granted only where it can be shown that none of the evidence in support of an allegation is admissible.  *See id.*

**B.   Stale Acts and the Continuing Violations Doctrine.**

Defendant Gordon Trucking moves to strike certain

**7**

allegations from the factual allegations section of the complaint.  Specifically, Gordon Trucking wants stricken all facts and issues alleged to have occurred before Betschart's recent reemployment date on February 13, 1995.  This includes, but is not limited to, allegations of Betschart's over 18 years of service to Gordon Trucking, Betschart's heart surgery in 1994, and Betschart being called "Chester" by co-workers.

Additionally, Gordon Trucking wants stricken all factual allegations for which the right to relief has expired under applicable statute of limitations.  This includes, allegations of Betschart receiving an award in 2001, Betschart being called "Chester" by co-workers, Betschart's hunting trip experience, and all other factual allegations which were not themselves timely filed within applicable statute of limitation filing periods.

Betschart's complaint alleges causes of action under the ADEA, ADA, FEHA, ERISA, and adverse termination against public policy.  Gordon Trucking's assertion that factual allegations should be stricken from the complaint is addressed by the "continuing violations doctrine" which originally was applied to Title VII discrimination claims, but has been expanded to apply to ADEA, ADA and FEHA claims.

Under a Title VII unlawful employment practice discrimination suit, a claim may arise from either a discrete act or a hostile environment.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111-12 (2002).  A discrete act consists of an unlawful practice that "occurred" on the day it "happened."  *Id*. at 110.  Discrete acts alone are each enough to constitute the basis for a claim, but must be brought within an applicable

**8**

1  statute of limitations time period, or they will be non-

2  actionable.  *Id*. at 113.  Under the "continuing violations

3  doctrine," these time-barred claims remain non-actionable, but

4  they may be admitted as relevant admissible background evidence

5  if other related claims are brought in a timely manner.  *Id*.;

6  *Lyons v. Eng.*, 307 F.3d 1092, 1111 (2002).  Examples of discrete

7  acts include "termination, failure to promote, denial of

8  transfer, or refusal to hire."  *Morgan*, 536 U.S. at 114.

9  Conversely, a hostile environment is comprised of separate acts

10  which collectively constitute a single unlawful employment

11  practice arising from the cumulative effect of the multiple acts.

12  *Id*., at 117-18 (citing 42 U.S.C. § 2000e-5(e)(1)); *see also*

13  *Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S. Ct. 2162, 2175

14  (2007).  If a plaintiff can establish at least one act

15  contributing to a hostile environment claim occurred within the

16  charge filing period, and the plaintiff timely files on that act,

17  then the entire period of the hostile environment, may be

18  considered by the court for liability determination.  *Morgan*, 536

19  U.S. at 117.  This consideration allows all acts contributing to

20  the hostile environment to be actionable and admissible as

21  evidence, including acts that would otherwise be time-barred.

22  *Id*. at 117-18.

23      Although *Morgan*, was a Title VII case, the continuing

24  violations doctrine is applied when considering an ADEA, ADA or a

25  California FEHA case.  *See Hashimoto v.* Dalton, 118 F.3d 671, 675

26  (9th Cir. 1997) (ADEA); *Douglas v. Cal. Dept. of Youth Auth.*, 271

27  F.3d 812, 822 (9th Cir. 2001) (ADA); *Brown v. City of Tucson*, 336

28  F.3d 1181, 1189 (2002) (ADA); *Ingle v. Circuit City Stores, Inc.*,

328 F.3d 1165, 1175 (9th Cir. 2003) (FEHA); *Richards v. CH2M Hill, Inc.*, 26 Cal.4th 798, 812-24, 111 Cal.Rptr.2d 87 (2001) (FEHA); *Accardi v. Superior Court*, 17 Cal. App. 4th 341, 321, 21 Cal.Rptr.2d 292 (Cal. App. 1993) (FEHA).

Gordon Trucking incorrectly argues that all allegations of discrimination pertaining to time periods prior to any applicable statute of limitations period are time-barred stale allegations, and therefore, they are immaterial[1] and impertinent[2], and as such, they should be stricken under Federal Rule of Civil Procedure 12(f).  Gordon Trucking contends ample case law supports this argument.  This misrepresentation is confirmed by the absence of case law to support this contention.

Gordon Trucking further argues Betschart's most recent employment period is the only relevant time period.  Gordon Trucking contends any prior time period, including prior work history, has no bearing on discrimination charges arising from the more recent period.  Gordon Trucking argues that facts prior to Betschart's rehiring on February 13, 1995, even if proven true, are immaterial and impertinent and therefore, are superfluous historical allegations that should be properly stricken according to *Fantasy Inc. V. Fogerty,* 984 F.2d 1524, 1527 (9th Cir. 1993), *overruled on other grounds by* 510 U.S. 517,

---

[1] "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded."  Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382, at 706-07 (1990).

[2] "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question."  Wright & Miller, *supra* note 1 § 1382, at 706-07.

(1994); *see e.g. Healing v. Jones,* 174 F. Supp. 211, 220 (D. Ariz. 1959).  Gordon Trucking argues the "gap" in employment periods makes discovery of facts alleged to occur prior to February 13, 1995, work material and undue prejudice because these facts unnecessarily broaden the scope of discovery.  Gordon Trucking asserts "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ."  *Sidney-Vinstein,* 697 F.2d at 885.

However, according to *Morgan*, an employee fired and then later rehired by the same company, is not limited to presenting evidence from only the most recent employment period.  *See Morgan*, 536 U.S. at 112 (citing *United Airlines Inc. v. Evans*, 431 U.S. 553, 558 (1977)).  The employee may present acts from the first employment period as relevant background evidence to support a timely filed discrete act discrimination claim arising out of the second employment period.  *Id*.  A discriminatory act from a first employment period which was not made the basis of a timely charge is merely an unfortunate historical event with no present legal consequences when separately considered.  However, it may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue.  *Morgan*, 536 U.S. at 112 (citing *Evans*, 431 U.S. at 558).

Gordon Trucking incorrectly asserts in its reply that Betschart cites no cases which deal with discrete acts of discrimination during a "first tour of duty."  Additionally, Gordon Trucking inaccurately asserts stale discrete acts are not allowed as background evidence.  Betschart cites *Evans*, 431 U.S.

at 558 (1977).  In *Evans,* an airline stewardess was unlawfully forced to resign due to her marriage in 1968 and was later rehired four years later in 1972 with a complete loss of seniority.  *Evans*, 431 U.S. at 553.  This stewardess claimed the forced resignation could be asserted beyond the applicable statute of limitations time period because the loss of seniority was a continuing effect which kept the original claim alive from the first employment period into the second employment period. *Evans*, 431 U.S. at 556-57.  The Supreme Court in *Evans*, ignored the gap in employment and found the forced resignation was a non-actionable discrete act and therefore time-barred.  *Evans*, 431 U.S. at 558.  However, the Supreme Court in *Morgan*, found the forced resignation "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue".  *Morgan*, 536 U.S. at 112 (quoting *Evans*, 431 U.S. 553, 558 (1977)); *see also* Lindemann & Grossman, *Employment Discrimination Law*, CH. 26.II.B.3.b. ("[T]ime-barred employment actions may be offered as 'background' evidence to support timely claims by employees.").

Like the employee in *Evans,* Betschart attempts to present evidence of discrimination from his first employment period. Betschart was not employed by Gordon Trucking for approximately one year compared to the four year gap in *Evans*.  The time of the gap between Betschart's employment periods is less than the gap in *Evans*, which strengthens the argument for a finding of relevance for factual allegations from Betschart's first employment period.

1.    <u>Factual Allegations Similar to Those Gordon Trucking</u>

### Moves to Strike Constitute Relevant Background Evidence

Fed. R. Civ. P. 21(b) extends the scope of discovery to all information that is relevant and not privileged.  Additionally, under Rule 21(b), relevant information does not need to be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

### 2.   Assessment of the Stale Evidence for Relevance

#### a.   ADEA Claim

Under the ADEA, a civil action alleging age discrimination may not be brought until sixty days after an ADEA charge is filed with the Equal Employment Opportunity Commission ("EEOC").  29 U.S.C. § 626(d).  The charge must be filed within 180 days after the alleged unlawful practice occurred.  29 U.S.C. § 626(d)(1). Betschart alleges in his complaint that he filed a charge with the EEOC in a timely manner, but has not clearly stated when he filed his charges with the EEOC, and what was included in those charges.  The most recent act of alleged discriminatory conduct in Betschart's claim is Betschart's termination which occurred on June 6, 2007, which Betschart alleges was within the 180 day charge filing period.  Termination of employment is considered a discrete discrimination act[3] as it "occurred" on the day it "happened."  *Morgan*, 536 U.S. at 114.  Thus, it appears

_____

[3] As opposed to an act constituting part of a hostile environment which "typically comprises a succession of harassing acts, each of which 'may not be actionable on its own.'  In addition, a hostile work environment claim 'cannot be said to occur on any particular day.'  In other words, the actionable wrong is the environment, not the individual acts that, taken together, create the environment."  *Ledbetter,* 127 S.Ct. 2175; (quoting *Morgan*, 536 U.S. at 115-116).

1   Betschart's underlying actionable ADEA claim is based upon this
2   discrete act of discrimination.  Betschart further alleges that
3   prior to his termination, Gordon Trucking engaged in ongoing and
4   continuous age discriminatory behavior which included Betschart's
5   involuntary transfer and demotion on June 6, 2006.  According to
6   the continuing violations doctrine, although Betschart's alleged
7   involuntary transfer and demotion may fall outside the EEOC's 180
8   day filing period, and are therefore, non-actionable; either of
9   these allegations may be used as relevant and admissible
10  background evidence to show prior discriminatory actions by
11  Gordon Trucking, to support Betschart's actionable alleged
12  discrete act of discriminatory termination.

13              b.   ADA Claim

14       In California, under the ADA, Plaintiff is allowed 300 days
15  from an act of discrimination to file charges alleging disability
16  discrimination with the EEOC if he first files charges with the
17  California Department of Fair Employment and Housing ("DFEH").
18  42 U.S.C. § 2000e-5(e); *Santa Maria v. Pac. Bell*, 202 F.3d 1170,
19  1176 (9th Cir. 2000).  He may file a claim either ninety days
20  after receiving a right-to sue letter from the EEOC, or 180 days
21  after the EEOC had received the charges.  42 U.S.C. §2000e-5.
22  Betschart alleges in his complaint that he filed a charge with
23  the EEOC in a timely manner, but has not clearly stated when he
24  filed his charges with the EEOC, or what was included in those
25  charges.  The parties have not clarified what events are within
26  the statute of limitations period.  Depending on the timeline of
27  when he filed with the EEOC, and what charges were included, his
28  non time-barred claims may include his termination on June 6,

**14**

2007, his transfer on May 31, 2007, or his alleged payment
discrimination in September 2006.  If these are found to be
discrete discrimination acts, then prior allegations of
disability discrimination may constitute relevant admissible
background evidence supporting any of these timely discrimination
claims.  Prior disability discrimination allegations include
Betschart being called "Chester" from 1990 through 2000, his
alleged hip-related teasing on the company hunting trip in 1997
or 1998, and his alleged teasing about his inability to quickly
cross a street in 2006.  Additionally, discrimination directed
towards Betschart's family member's disabilities may also
constitute relevant background evidence as it still falls under
applicable ADA statutes as "disability discrimination."  If any
of these untimely acts are found not to support a discrete act
claim, but rather constitute part of a timely hostile environment
claim, then pursuant to the continuing violations doctrine, these
acts may be untimely, but may still be actionable as evidence of
a hostile environment.

        c.   **FEHA Claim**

Under FEHA, a plaintiff must file disability or age
discrimination charges with either the DFEH or the EEOC within
one year of the date of the alleged unlawful act.  Cal. Gov't
Code §12960(d).  Plaintiff then has one year to file a claim
after the DFEH issues a right-to-sue notice.  Cal. Gov't Code
§12965(d)-(e).  Betschart has not clarified when he filed his
charges with the DFEH, aor what was included in those charges.
Depending on the timeline of his filing, and what was included in
the charges, his non time-barred claims may include among other

things, his termination on June 6, 2007, his transfer on May 31, 2007, his alleged payment discrimination in September 2006, and his discussion about his wife's health post May 31, 2006.  If any non time-barred alleged acts are found to be discrete discrimination acts, then time-barred discrimination acts may be relevant admissible background evidence.  Such acts may include Betschart's alleged teasing by Gordon Trucking management about his age on such occasions as when Betschart was called "Chester" from 1990 through 2000, his alleged hip-related teasing on the company hunting trip in 1997 or 1998, his alleged teasing about his inability to quickly cross a street in 2006, and any other disability discrimination directed towards Betschart based on his own, or his family member's disabilities.  Additionally, company policies that discriminated against him because of his age such as Betschart's involuntary transfer and demotion on June 6, 2006 may constitute background evidence of a discrete act discrimination claim.  If any of the timely claims are based on hostile environment discrimination, then pursuant to the continuing violations doctrine, these prior untimely acts of discrimination may be actionable as part of that hostile environment.

### d.   Conclusion for ADEA, ADA and FEHA Claims

Whether ADA, ADEA, or FEHA violations which occurred prior to Betschart's first employment period are admitted as background evidence to support a discrete act discrimination claim, or are admitted as part of an actionable hostile environment claim, any of these allegations are more than reasonably calculated to lead to the discovery of admissible evidence under Rule 26(b) as they

allege previous discriminatory actions by Gordon Trucking against Betschart.   The continuing violations doctrine as applied by the Supreme Court in *Morgan*, clearly establishes that discrimination acts not filed upon within the statute of limitations period are time-barred and non-actionable.   However,   these acts may still constitute admissible relevant background evidence to support a timely filed discrimination claim based upon a discrete act. Additionally, these otherwise stale claims are actionable if they can be shown to be part of a timely filed hostile work environment claim.   These allegations are not superfluous, immaterial, or impertinent and do not broaden the scope of discovery beyond what the law permits.   Betschart's allegations concerning discriminatory acts which were not themselves timely filed within applicable statute of limitations periods will not be stricken.

In *Evans*, the Supreme Court ignored a gap in employment when it applied the continuing violations doctrine and found discriminatory acts from an employee's first employment period could be introduced as background evidence for later discrimination claims arising from the second employment period. Acts occurring before Betschart's more recent employment period, although non-actionable, are more than reasonably calculated to lead to admissible evidence under Rule 21(b), just as the Supreme Court in *Evans*, found similar facts to be admissible relevant background evidence to support other timely filed discrimination claims.   Betschart's allegations concerning discriminatory acts which occurred prior to February 13, 1995 will not be stricken. The motion is DENIED.

17

1

           **e.   ERISA Claim**

2      ERISA section 510[4] provides no statute of limitations so the

3  most analogous state law limitations period must be applied.

4  *Burrey v. Pac. Gas & Elec. Co.*, 159 F.3d 388, 396 (9th Cir. 19980

5  (citing *Felton v. Unisource Corp.*, 940 F.2d 503, 510 (9th Cir.

6  1991).  "[T]he most analogous state law claim [to a 510

7  violation] [is] wrongful termination against public policy or

8  retaliatory discharge."  *Id* at 512.  In California, one of two

9  statutes of limitations may govern a wrongful termination

10  action.[5]  *Id*.  Any of Betschart's claims and supporting factual

11  allegations which were timely filed within the applicable

12  California statute of limitations period are actionable.

13      However, the Ninth Circuit has found the doctrine of

14  continuing violations does not apply to claims based on the

15  Employee Retirement Income Security Act (ERISA), because the

16  ERISA statute requires a plaintiff's knowledge to be measured

17  _____

18      [4] **Section 510 of ERISA provides in part "It shall be
   unlawful for any person to discharge, fine, suspend, expel,**

19  **discipline, or discriminate against a participant or beneficiary
   for exercising any right to which he is entitled under the**

20  **provisions of an employee benefit plan, . . . or for the purpose
   of interfering with the attainment of any right to which such**

21  **participant may become entitled under the plan . . . ."  29**

22  **U.S.C. § 1140.**
        [5] **If the primary nature of the right sued upon in a wrongful**

23  **termination action is personal, the one-year statute of
   limitations period set forth in California Code of Civil**

24  **Procedure section 340, is applied.  *Burrey*, 159 F.3d at 396.  If
   primary nature of the right sued upon is considered to be of**

25  **fundamental public importance, protected or guaranteed either by**

26  **statute or the Constitution, and not the financial or economic
   loss from the termination of employment, then the two-year**

27  **statute of limitations set forth in the California Code of Civil**

28  **Procedure section 339 may be applied.  *Id.***

                              18

from the earliest date on which the breach was known, and the continuing violations doctrine would eliminate this actual knowledge requirement. *See* 29 U.S.C. § 1113(a)(2); *Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1332 (9th Cir. 1996) citing *Phillips v. Alaska Hotel & Rest. Employees Pension Fund*, 944 F.2d 509 (9th Cir. 1991). Therefore, unlike ADA, ADEA, and FEHA claims, factual allegations pertaining to the period of time prior to the ERISA statute of limitations period may not be relevant to the ERISA claim. They are time-barred and non-actionable, and do not constitute admissible background evidence under the continuing violations doctrine.

However, Federal Rules of Civil Procedure require no heightened standard beyond notice pleading for employment discrimination suits. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 514 (2002). Notice pleading is defined by Federal Rule of Civil Procedure 8(a)(2) which states "a pleading which sets forth a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relied". *See also Hearns v. San Bernardino Police Dept.*, 530 F.3d 1124, 1127 (9th Cir. 2008). Additionally, Federal Rule of Civil Procedure 8(e)(1) states "[N]o technical form is required." Requiring facts alleged in a complaint be relevant to all causes of action in a complaint, or that each factual allegation be paired up to the cause of action it is relevant to would undermine the notice pleading requirements set forth in the Federal Rules of Civil Procedure. Facts in a complaint are often relevant to one cause of action, but not another in the encompassing complaint.

Historical factual allegations pertaining to the period of

time prior to Betschart's recent employment period, are relevant
to the ADA, ADEA and FEHA causes of action.   Similarly,
historical factual allegations concerning time periods falling
outside the ADA, ADEA, and FEHA statute of limitations are
relevant to these causes of action.   Gordon Trucking's motion to
strike acts either occurring before Betschart's recent employment
period, or occurring outside of applicable statute of limitations
periods is DENIED.

**C.** **Allegations Concerning Betschart's Association With Disabled
Immediate Family Members**

    **1.** **ADA Discrimination**

Gordon Trucking also moves to strike Betschart's allegations
of ADA discrimination based on disabilities experienced by his
wife and stepson because they are scandalous, irrelevant,
impertinent, and prejudicial to Gordon Trucking.   Gordon Trucking
asserts that an ADA claim may be based only on discrimination
against a claimant's own disability.   Gordon Trucking cites the
ADA's language which states "no covered entity shall discriminate
against a qualified individual with a disability because of the
disability of such individual."   42 U.S.C. §12112(a) (2008).
However, Gordon failed to read or cite further in the ADA statute
which states "[T]he term 'discriminat[e]' includes . . .
excluding or otherwise denying equal jobs or benefits to a
qualified individual because of the *known disability of an
individual with whom the qualified individual is known to have a
relationship or association.*"   42 U.S.C. §12112(b)(4) (2008)
(emphasis added).   The Ninth Circuit has found the "qualified
individual" making an ADA claim need not have a disability

20

himself.  *Bates v. United Parcel Service*, 465 F.3d 1069, 1082 (9th Cir. 2006).  In *Bates*, the Ninth Circuit held section 12112 (b)(4) "[p]rotects qualified individuals who do not themselves have disabilities…" *Bates*,465 F.3d at 1082.  Betschart claims Gordon Trucking terminated him to avoid paying medical bills for Betschart's wife and stepson.  This expense avoidance is a recognized form of ADA discrimination.  *See Dewitt v. Proctor Hosp.*, 517 F.3d 944 (7th Cir. 2008) (court found held ADA and ERISA claims were valid when they were based on alleged discriminatory termination by an employer not wanting to pay medical costs incurred by the plaintiff's husband); *see also Le v. Applied Biosystems*, 886 F. Supp. 717, 720 (N.D. Cal. 1995) (Where an employer who terminated an employee to avoid payment of medical benefits for the employee's daughter's liver transplant was found to violate the ADA).  Gordon Trucking's assertion that an ADA claimant must allege discrimination based on the claimant's own disability is incorrect.  Gordon Trucking conceded at oral argument that its position on this claim is incorrect, and thus, it has abandoned this claim.  Gordon Trucking's motion to strike allegations based on disabilities experienced by Betschart's wife and stepson in violation of ADA is DENIED.

    2.  <u>FEHA Discrimination</u>

Similar to its ADA requirements assertion, Gordon Trucking asserts Betschart's allegations of discrimination based on disabilities experienced by his wife and stepson, are superfluous.  Gordon Trucking cites the California Government Code which states

It shall be an unlawful employment practice . . . For

21

> an employer, because of . . . disability . . . of any
> person, to refuse to hire or employ the person or to
> refuse to select the person for a training program
> leading to employment, or to bar or to discharge the
> person from employment or from a training program
> leading to employment, or to discriminate against the
> person in compensation or in terms, conditions, or
> privileges of employment.

Cal. Gov't Code § 12940(a) (West 2008).

Pursuant to this statue, Gordon Trucking asserts FEHA disability discrimination may not be claimed unless the claimant experiences the disability it is based upon.  Again, as with the ADA claim, Gordon failed to read or cite the entire statute. California Government Code Section 12926(m) states "[D]isability ...includes a perception that the person has any of those characteristics or that the person is associated with a person who has, or is perceived to have, any of those characteristics." Cal. Gov't Code § 12926(m) (West 2008).  Additionally, California Administration Code states: "It is unlawful for an employer or other covered entity to deny employment benefits to, harass, or intimidate any applicant or employee because the employer or other covered entity disapproves generally of the applicant's or employee's association with individuals because they are in a category enumerated in the Act."  Cal. Code Regs. tit. 2 § 7287.9 (2008).  Clearly Section 7287.9 protects claimants who do not themselves have disabilities.  Gordon Trucking conceded at oral argument that its position on this claim is incorrect, and thus, it has abandoned this claim.  Gordon Trucking's motion to strike based on allegations based on disabilities experienced by Betschart's wife and stepson in violation of FEHA is DENIED.

3.    <u>Wrongful Termination</u>

22

A claim for wrongful termination in violation of public policy ("Tameny Claim") is an exception to an at-will employment agreement and may only be based upon public policy which is specifically expressed in a constitutional or statutory provision.  *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 130 Cal.Rptr.2d 892 ( 2003) ("[The] public policy exception to the at-will employment rule must be based on policies 'carefully tethered to fundamental policies that are delineated in constitutional or statutory provisions . . . .'") (quoting *Silo v. CHW Med. Found.*, 27 Cal. 4th 1097, 1104, 119 Cal.Rptr.2d 698 (2002)); *see also Stevenson v. Superior Court*, 16 Cal. 4th 880, 894, 66 Cal.Rptr.2d 888 (1997).  This "tethering" of public policy to a specific provision avoids judicial policymaking and ensures that parties have adequate notice of the conduct that will subject them to tort liability.  *Stevenson*, 16 Cal. 4th at 889.  Gordon Trucking asserts because Betschart is alleging discrimination based on his family members' disabilities and not his own, Betschart's ADA and FEHA disability discrimination allegations have no statutory basis.  As discussed above, there are statutory provisions explicitly describing the prohibited conduct addressing allegations of discrimination due to association with disabled individuals.[6]  Betschart's Tameny claim is properly "tethered" to statutory provisions.  Gordon Trucking's motion to strike factual allegations supporting a wrongful termination in violation of public policy due to lack of

---

[6] **42 U.S.C. § 12112(b)(4)(ADA), Cal. Gov't Code § 12926(m) (FEHA); Cal. Code Regs. tit. 2 § 7287.9 (FEHA).**

statutory basis is DENIED.

**4.   <u>CONCLUSION</u>**

Defendants motion to strike is DENIED in its entirety.

IT IS SO ORDERED.

**Dated:   <u>August 28, 2008</u>**                    <u>      /s/ Oliver W. Wanger</u>
                                         UNITED STATES DISTRICT JUDGE